Jean KNAFEL; Karen Wuchich,
Plaintiffs–Appellants,

v.

PEPSI COLA BOTTLERS OF AKRON, INC.; Stanley Levin; James Davis; and General Cinema Corporation, Defendants–Appellees.

No. 87–3654.

United States Court of Appeals,
Sixth Circuit.

Argued March 24, 1988.
Decided July 7, 1988.

Timothy A. Shimko (argued), Spangenberg, Shibley, Traci & Lancione, Cleveland, Ohio, for plaintiffs-appellants.

David P. Hiller, Millisor, Belkin & Nobil, Columbus, Ohio, Robert B. Laybourne, Laybourne, Smith, Gore & Goldsmith, Akron, Ohio, Gregory L. Hammond, Lead Counsel (argued), Hahn, Loeser & Parks, Cleveland, Ohio, for defendants-appellees.

Before MILBURN and BOGGS, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

MILBURN, Circuit Judge.

Plaintiff-appellant Jean Knafel ("Knafel") appeals the judgment of the district court granting defendants-appellees' motion for summary judgment on Knafel's claims of retaliatory discharge in violation of § 704(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; retaliatory discharge for filing a workers' compensation claim in violation of Ohio Rev.Code § 4123.90; and intentional infliction of personal injury and emotional distress. Plaintiff-appellant Karen Wuchich ("Wuchich") appeals the judgment of the district court granting defendants-appellees' motion for summary judgment on Wuchich's claim that defendants intentionally caused her personal injury and emotional distress in retaliation for her participation in a prior civil rights action against defendants. Knafel's and Wuchich's actions were consolidated by the district court on June 9, 1987. For the reasons that follow, we dismiss plaintiff Knafel's appeal for lack of jurisdiction since there is no final judgment in the district court, and the district court's purported certification under Fed.R.Civ.P. 54(b) was improper. Further, we affirm the district court's grant of summary judgment dismissing plaintiff Wuchich's action, as her cause of action is preempted under § 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a).

I.

A. *Knafel's Action*

On February 27, 1986, Knafel filed a complaint in district court against five defendants, Pepsi Cola Bottlers of Akron, Inc. ("Pepsi"); Stanley Levin ("Levin"), the Vice–President and General Manager of Pepsi; James Davis ("Davis"), the Production Manager at Pepsi; General Cinema Corporation ("GCC"), a corporation which, together with Pepsi, bottled soft drinks for the Ohio area; and the Truck Drivers Local Union No. 348 ("the Union"). The complaint was framed in four counts, and Count I alleged a cause of action only against defendants Pepsi, Levin, Davis, and GCC. Knafel charged in Count I that she had been discharged by her former employers as a result of her involvement in a prior civil rights action against these defendants. She claimed that this retaliatory discharge occurred in violation of § 704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a). The prior action, *Knafel, et al. v. Pepsi Cola Bottling of Akron, Inc., et al.,* is referred to by the parties as Case No. 83–3534A.[1]

Count II alleged a cause of action only against the Union (not a party to this appeal) and charged that the Union had breached its duty of fair representation, although the complaint made no reference to § 301 of the LMRA. Knafel also alleged in Count II that the Union had violated Title VII by discriminating against her

---

1. Case No. 83–3534A was the result of an action filed by Knafel, Wuchich, and other employees of the defendants, alleging that defendants engaged in sex discrimination, equal pay violations, and collective bargaining agreement violations. The case was settled by the entry of a consent decree on February 28, 1985, which provided in part that the defendants would not retaliate against plaintiffs for their participation in the action.

in retaliation for her participation in the earlier action; *viz.*, C83–3534A.

Counts III and IV were both pendent state law claims. In Count III, Knafel alleged a cause of action under Ohio Rev. Code § 4123.90, charging that her employers had retaliated against her for filing a workers' compensation claim.[2] In Count IV, Knafel alleged that defendants had intentionally caused her both personal and emotional injury by insisting she perform work which subjected her to injuries that defendants "intended or knew were substantially certain to occur as a consequence of such intentional conduct." J.A. at 16–17.

Knafel began working at Pepsi in 1978 and worked primarily on the bottling line at the company through her termination on September 18, 1985. Apparently, Knafel experienced back problems and, as a result, was absent from the company from time to time on medical leave. Knafel alleged the company intentionally assigned her to projects which were calculated to aggravate her back condition, allegedly in retaliation for her participation in the action charged in Case No. 83–3534A. Knafel claimed that through a combination of her work assignments and job conditions, culminating with her termination, the defendants continued to retaliate against her and discharged her in violation of Title VII. Defendants, however, countered that Knafel was terminated solely for gross and excessive absenteeism and that all work assignments given to her were proper.[3]

### B. *Wuchich's Action*

On September 24, 1986, Wuchich filed an action in the Summit County Court of Common Pleas, Summit County, Ohio, against these same defendants (except the Union), alleging that the defendants had intentionally caused her harm in retaliation for her participation with Knafel in Case No. 83–3534A. Defendants removed the action to the district court where Wuchich's action was later consolidated with the Knafel proceeding.

Wuchich is still employed by Pepsi. She claims that the situation of her present employment, including job assignments and supervisor comments, is intended to intentionally inflict harm upon her. Defendant Pepsi claims that any changes in Wuchich's work assignments have been strictly the result of business necessities and, further, that Wuchich has not lost time at work or suffered any other monetary injury as a result of defendants' actions.

### C. *District Court's Judgment as to Knafel's Action*

On August 11, 1986, defendants Pepsi, Levin, Davis, and GCC moved for summary judgment against plaintiff Knafel. The court, on April 27, 1987, entered judgment, concluding first that Count I of the complaint, alleging a violation of Title VII, must be dismissed for lack of jurisdiction as to defendants Levin, Davis, and GCC because Knafel failed to name these three defendants as respondents in a charge of discrimination filed with the EEOC on October 25, 1985. The court found that a failure to name a defendant as a respondent before the EEOC strips the court of Title VII jurisdiction. The court, however,

---

**2.** Ohio Rev.Code § 4123.90 (Anderson 1973) provides in relevant part that

> no employer shall discharge, demote, resign, or take any punitive action against any employee because such employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer.

**3.** Knafel has presented a claim that she was terminated without just cause to an arbitrator, who, on April 16, 1986, concluded that Pepsi had acted within its rights in discharging Knaf-

el. The collective bargaining agreement restricts discharge to those supported by cause:

> It is understood and acknowledged by both parties to this AGREEMENT that a very essential part of the business of the COMPANY is dependent on the high quality of the products produced, and for this reason, it is understood and agreed that dishonesty, carelessness, or incompetency shall be a cause for dismissal from employment. If requested by the employee, a hearing is to be held as to his discharge.

J.A. at 110.

*denied* defendant Pepsi's motion for summary judgment as to Count I, and this aspect of Knafel's complaint remained pending before the district court at the time of her appeal.

As to Count II, the court dismissed Knafel's claims against the Union under § 301 of the LMRA for lack of jurisdiction because Knafel had not alleged that she had attempted to exhaust internal union remedies. The court, however, ordered that Knafel's Title VII claim against the Union should proceed to trial, noting that the Union had failed to file a dispositive motion with the court. Thus, the court retained jurisdiction of the Title VII claim against the Union.

With regard to Knafel's pendent state law claims presented in Counts III (retaliatory discharge for filing a workers' compensation claim) and IV (intentional infliction of injury), the court held that under § 301 of the LMRA, the claims are preempted as "resolution of [these] state-law claim[s] is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract...." J.A. at 372 (quoting *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985)).[4] Subsequently, on June 9, 1987, the district court granted summary judgment dismissing Knafel's Counts III and IV. The court then certified for purposes of appeal its dismissal of Counts III and IV pursuant to Fed.R.Civ.P. 54(b).[5] In certifying this aspect of Knafel's action, the court stated: "[A]s to Count III and Count IV of the complaint, the court ... expressly determines that there is no just reason for delay and instructs the Clerk to enter final judgment, pursuant to Rule 54(b) ... in favor of defendants [Pepsi, Levin, Davis and GCC]...." J.A. at 418–19.

### D. *District Court's Judgment as to Wuchich's Action*

On May 4, 1987, defendants in the Wuchich action filed a motion for summary judgment which was granted by the district court on June 9, 1987. The court found that Wuchich's action (which paralleled Count IV of Knafel's complaint) should be dismissed since her claim of intentional infliction of injury is likewise preempted under § 301 of the LMRA. As Wuchich's action involved only this one claim, the court's grant of summary judgment in favor of defendants finally disposed of Wuchich's case. Notice of appeal was jointly filed by Wuchich and Knafel on July 8, 1987.

## II.

### A.

■ Knafel first argues that the district court erred in deciding not to exercise jurisdiction over defendants GCC, Levin, and Davis as to Count I of her complaint for failure to name these defendants as respondents in her EEOC charge. We, however, conclude that we are without jurisdiction to rule on this issue.

Under 28 U.S.C. § 1291, courts of appeals have jurisdiction only over "final decisions of the district courts...." An appeal taken from a nonfinal judgment is beyond our jurisdiction and must be dismissed. *See Liberty Mut. Ins. Co. v. Wetzel,* 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976). Moreover, even though the parties have not raised the issue, finality is a jurisdictional prerequisite for this court and

---

4. The district court also stated that even if it had concluded these claims were not preempted, it would have declined, in the exercise of its discretion, to exercise its pendent jurisdiction over the state claims.

5. Fed.R.Civ.P. 54(b) provides:
   When more than one claim for relief is presented in an action, ... or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties....

must be raised *sua sponte. Id* at 740, 96 S.Ct. at 1204.

Generally, a final judgment is defined as "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). *See also Donovan v. Hayden, Stone, Inc.,* 434 F.2d 619 (6th Cir.1970); *Koke v. Phillips Petroleum Co.,* 730 F.2d 211, 215 (5th Cir.1984). However, "[t]he term ... does not have a single fixed meaning." *McDonald v. Schweiker,* 726 F.2d 311, 313 (7th Cir.1983). Rather, "the Supreme Court's treatment of the finality doctrine seems to vacilate [sic] between dual approaches: on the one hand, suggesting that a final judgment is one that completely ends the litigation on the merits, on the other hand, eschewing such a rigid requirement of finality while reaffirming the importance of the rule." *Freeman v. Califano,* 574 F.2d 264, 266–67 (5th Cir. 1978) (per curiam).

While the contours of the finality doctrine are less than clearly defined, it is clear that since the district court here has not completely disposed of Knafel's action as to Count I, no final judgment exists. The partial dismissal of all defendants except Pepsi from Count I was not certified under Rule 54(b). Moreover, the dismissal is neither collateral, *see Stringfellow v. Concerned Neighbors in Action,* 480 U.S. 370, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987), nor otherwise appealable as an interlocutory order under 28 U.S.C. § 1292. At the time of her appeal, Count I of Knafel's action remained pending as against defendant Pepsi, and, consequently, no final or appealable judgment existed. Accordingly, we hold this aspect of Knafel's appeal must be dismissed.

**B.**

■ Knafel also argues that the district court erred in holding her pendent state claims presented in Count III and Count IV of her complaint are preempted under § 301 of the LMRA, 29 U.S.C. § 185(a). However, we hold that since the district court did not set out its rationale for Rule

54(b) certification, this aspect of Knafel's appeal should also be dismissed for lack of jurisdiction.

This court has made it clear that in entering a Rule 54(b) certification, the district court should explain the factors warranting certification. *See Corrosioneering, Inc. v. Thyssen Environmental Systems, Inc.,* 807 F.2d 1279 (6th Cir.1986); *Coalition For Equitable Minority Participation in Architectural Contracts in Tennessee v. Metropolitan Gov't of Nashville,* 786 F.2d 227 (6th Cir.1986) (hereinafter *COMPACT*); *Solomon v. Aetna Life Ins. Co.,* 782 F.2d 58 (6th Cir.1986). In *Solomon,* we declared:

> We acknowledge that the district court's decision to certify a claim for immediate appeal under Rule 54(b) merits substantial deference. That deference, however, rests on the assumption that the district court undertook to weigh and examine the competing factors involved in the certificate decision. *Certainly a proper exercise of discretion under Rule 54(b) requires the district court do more than just recite the 54(b) formula of "no just reason for delay."*

*Solomon,* 782 F.2d at 61 (citations omitted, emphasis supplied).

Where the district court does not articulate the analysis guiding its certification, "any deference due the district court's Rule 54(b) order is nullified, and ... due to a lack of finality we are without jurisdiction." *Id.* at 62; *see COMPACT,* 786 F.2d at 231 ("We are unable to give deference to a conclusion totally devoid of supporting reasons...."). Moreover, even where the district court properly supports its certification, Rule 54(b) should not be used routinely, *see Curtiss–Wright Corp. v. General Electric Co.,* 446 U.S. 1, 10, 100 S.Ct. 1460, 1466, 64 L.Ed.2d 1 (1980), but rather should be reserved for "the infrequent harsh case," *Panichella v. Pennsylvania R.R.,* 252 F.2d 452, 455 (3d Cir.1958), *quoted in Solomon,* 782 F.2d at 60, where certification serves the interests of justice and judicial administration. *Id.; Curtiss–Wright Corp.,* 446 U.S. at 10, 100 S.Ct. at 1466 ("The court of appeals must, of

course, scrutinize the district court's evaluation of [the factors supporting certification] *so as to prevent piecemeal appeals in cases which should be reviewed only as single units.*") (emphasis supplied); *see also COMPACT,* 786 F.2d at 230; *Solomon,* 782 F.2d at 60.

In the present case, the district court's order made no analysis of the factors relevant under Rule 54(b), but merely parroted the language of the Rule as expressly found inadequate in *Solomon.* As a result, we decline to defer to the court's purported certification and hold that it is a nullity. *Cf. Dougherty v. Parsec, Inc.,* 824 F.2d 1477 (6th Cir.), *petition for cert. filed,* (October 19, 1987) (where a district court's certification of a finding of preemption under § 301 of the LMRA was found proper in light of "[its] thorough statement in support of [its] finding that there was 'no just reason for delay.'") (emphasis supplied).

In this connection, and being mindful of judicial economy, we again note that Count I (partial dismissal only) and Count II (no appeal) of Knafel's complaint are still pending before the district court, and the eventual resolution of her claims may be appealed. Accordingly, our holding as to the purported certification of Counts III and IV will have the effect of preserving Knafel's action for later appeal as "a unified package." *Corrosioneering,* 807 F.2d at 1285 n. 5.

### C.

■ Wuchich argues that the district court erred in granting defendants' motion for summary judgment on her claim of intentional infliction of emotional distress and physical injury. As this was the only cause of action she alleged in her complaint, the district court completely disposed of Wuchich's action by granting summary judgment in defendants' favor and entering a final judgment dismissing her

action. We therefore have jurisdiction of Wuchich's appeal.

Wuchich's complaint (like Count IV of Knafel's complaint) alleged that by reason of the work assigned to her, defendants intentionally caused Wuchich injury. As stated earlier, the district court concluded that this claim is preempted under § 301 of the LMRA.[6]

In *Allis–Chalmers v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), the Supreme Court addressed the issue of when and to what extent § 301 of the LMRA preempts a state law cause of action which touches upon a collective bargaining agreement. The Court first observed that where congressional authority to legislate exists (*e.g.,* in the area of labor relations, pursuant to the commerce clause, *see NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed.2d 893 (1937)), Congress has the additional power to preempt state law under the supremacy clause of Article VI of the United States Constitution. *Allis–Chalmers,* 471 U.S. at 208, 105 S.Ct. at 1909. By enacting § 301, Congress has exercised its authority to "occupy the ... field," at least in part, of labor law. *Id.; cf. Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947) (warehouse regulation); *Pacific Gas & Elec. Co. v. State Energy Comm'n,* 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983) (nuclear power plants). Thus, the "'dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute [so that] issues raised in suits of a kind covered by § 301 [are] to be decided according to the precepts of federal labor policy.'" *Allis–Chalmers,* 471 U.S. at 209, 105 S.Ct. at 1910 (quoting *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962)).

---

**6.** Section 301 provides:

   Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought

in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

*Allis–Chalmers* involved a state tort action for breach of an insurer's duty to act in good faith and deal fairly with disability insurance claimants. Under the applicable state law, the bad-faith handling of an insurance claim was actionable in tort. The plaintiff in *Allis–Chalmers* brought a claim in state court, alleging that both his employer and insurer had exercised bad faith in handling his claim. The plaintiff, however, was a member of a union which had negotiated a collective bargaining agreement with his employer that provided for group health and disability plans. Additionally, the collective bargaining agreement established a grievance procedure which could apply in the event of disputes with the employer regarding disability plan payments. The agreement did not, however, explicitly impose a duty of good faith upon either the employer or the insurer.

The Supreme Court found that if "evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract[,]" then the state tort law is preempted. *Allis–Chalmers*, 471 U.S. at 213, 105 S.Ct. at 1912. The Court explained: "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Id.* at 220, 105 S.Ct. at 1916 (citing *Avco Corp. v. Aero Lodge 735*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968)).

The Court held in *Allis–Chalmers* that the plaintiff's claim was preempted, even though the collective bargaining agreement did not directly address the good faith issue. The Court stated that the right asserted by the plaintiff "derives from the contract," *Allis-Chalmers*, 471 U.S. at 218, 105 S.Ct. at 1914, and thus "[u]nless federal law governs that claim, the meaning of the health and disability-benefit provisions of the labor agreement will be subject to varying interpretations, and the congressional goal of a unified federal body of labor-contract law would be subverted." *Id.* at 220, 105 S.Ct. at 1915–16. Also, the Court found that as conversion of plaintiff's claim into a state tort claim would allow plaintiff to avoid the arbitration provisions of the agreement, the "need to preserve the effectiveness of arbitration" counseled in favor of finding preemption. *Id.* at 219, 105 S.Ct. at 1915; *see Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 105, 82 S.Ct. 571, 577, 7 L.Ed.2d 593 (1962).

In *Allis-Chalmers*, the Court was also careful to distinguish preemption under *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), which applies to protect the National Labor Relations Board's primary jurisdiction over unfair labor practice charges.

> So-called *Garmon* pre-emption involves protecting the primary jurisdiction of the NLRB, and requires a balancing of state and federal interests. The present tort suit would allow the State to provide a rule of decision where Congress has mandated that federal law should govern. *In this situation the balancing of state and federal interests required by Garmon pre-emption is irrelevant,* since Congress, acting within its power under the Commerce Clause, has provided that federal law must prevail.

*Id.* at 214 n. 9, 105 S.Ct. at 1912 n. 9 (emphasis supplied). Although plaintiff in the present case relies on several *Garmon* preemption cases in her brief, as the above quote makes clear, those cases are inapposite to considerations of preemption under § 301.

Recently, the Supreme Court has reaffirmed its *Allis-Chalmers* holding in *International Bhd. of Elec. Workers v. Hechler*, —— U.S. ——, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987).[7] In *Hechler*, the Court

---

7. We are aware that on June 6, 1988, the Supreme Court rendered its decision in *Lingle v. Norge Div. of Magic Chef, Inc.*, —— U.S. ——, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), from the decision reported at 823 F.2d 1031 (7th Cir. 1987) (en banc). Among other things, *Lingle* raises the issue of whether a state tort claim of retaliatory discharge for filing a workers' compensation claim was preempted under section 301. The Court held that the claim was not preempted as the state law claim could be resolved without interpreting the collective bar-

reviewed the history of § 301 preemption and concluded that the issue in preemption cases is whether the plaintiff's claim "is sufficiently independent of the collective-bargaining agreement to withstand the pre-emptive force of § 301." *Id.* 107 S.Ct. at 2167. In *Hechler*, the plaintiff brought an action in state court against her union, alleging a state tort claim for breach of the union's alleged duty to provide union members with a safe place to work. The plaintiff, who was injured while working on an assignment that she felt was beyond the scope of her training, maintained that the union had a duty to ensure safe and adequate work security for its union members under state tort law.

The Supreme Court found plaintiff's claim preempted by § 301 because a court hearing her claim would necessarily have to determine:

> [F]irst, whether the collective-bargaining agreement in fact placed an implied duty of care on the Union to ensure that [plaintiff] was provided a safe workplace, and, second, the nature and scope of that duty, that is, whether, and to what extent, the Union's duty extended to the particular responsibilities alleged by [plaintiff] in her complaint.

*Id.* at 2168. Thus, the Court held plaintiff's claim is not "sufficiently independent" of § 301 to avoid federal law preemption. *Id.* *See also Michigan Mut. Ins. Co. v. United Steelworkers of America, Local 2659*, 774 F.2d 104 (6th Cir.1985) (per curiam), *cited in Hechler*, 107 S.Ct. at 2164.

Plaintiff Wuchich's complaint in the present case alleges essentially that the conditions of her present employment are calculated to intentionally bring harm upon her. She, however, is protected by a collective bargaining agreement which (1) prohibits her employer from discriminating against her for activities engaged in for, or on behalf of, the union; (2) imposes restrictions on her employer regarding working conditions and transfer of employees; and (3) requires arbitration of any dispute re-

garding "the applicability or interpretation of [the agreement], or rights or obligations under any of its provisions, or the discharge or disciplining by the EMPLOYER of any person covered by [the agreement]." J.A. at 107. As a result, we conclude that plaintiff's claim is "substantially dependent" upon analysis of the agreement and thus hold the claim preempted under § 301 of the LMRA. In our view, this holding has the effect of promoting the "uniformity and predictability" of interpretation of labor-contract disputes which *Allis-Chalmers* held is essential under § 301. *Allis-Chalmers*, 471 U.S. at 211, 105 S.Ct. at 1911. *See also Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246 (6th Cir. 1986).

### III.

In conclusion, we hold that we are without jurisdiction to address the partial grant of summary judgment as to Count I of plaintiff Knafel's complaint for lack of a final judgment, and, further, that the district court's purported certification under Rule 54(b) of its grant of summary judgment as to Counts III and IV of Knafel's complaint is a nullity. Accordingly, plaintiff Knafel's appeal is dismissed for lack of jurisdiction. However, as to plaintiff Wuchich's appeal, we AFFIRM the judgment of the district court.

CELEBREZZE, Senior Circuit Judge, concurring in part and dissenting in part.

If the district court's dismissals of Counts III and IV of plaintiff Knafel's complaint were the only issues facing us in this case, I would have little difficulty joining in the majority's determination that we are without jurisdiction over her appeal. Viewing Knafel's appeal in isolation, I can discern no equitable or juridical concerns that would justify a departure from the normal procedure requiring Knafel to appeal these dismissals after ultimate termination of her case in the district court.

gaining agreement, and, therefore, the state law claim was independent of the agreement for section 301 preemption purposes. *Lingle* has no

bearing on Wuchich's appeal, as conceded by counsel at oral arugment.

Under these circumstances, we would have no reason to acquiesce in the district court's unexplained Rule 54(b) certification. *See Corrosioneering Inc. v. Thyssen Envtl. Sys. Inc.,* 807 F.2d 1279 (6th Cir. 1986); *COMPACT v. Metropolitan Gov't of Nashville,* 786 F.2d 227 (6th Cir.1986); *Solomon v. Aetna Life Ins. Co.,* 782 F.2d 58 (6th Cir.1986).

This case is complicated, however, by the presence of plaintiff Wuchich's appeal.* I agree with the majority that the district court's dismissal of Wuchich's complaint should be affirmed; the intentional torts arising out of alleged retaliatory work assignments are preempted by section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1982). It appears to me, however, that as a practical matter, our decision on the merits of Wuchich's claim will also be dispositive of Knafel's appeal from the dismissal of Count IV, due to the similarity between the two. As the majority itself notes, the two claims are "parallel." The plaintiffs were less cautious: in their motion to consolidate, they referred to their claims as "virtually identical." The district court accordingly granted the motion and ordered consolidation. Finally, in dismissing Wuchich's claim, the district court did not undertake a separate analysis, but instead explicitly relied on its reasoning in dismissing Knafel's Count IV. Given that the two claims are so closely intertwined, it is difficult to imagine how our resolution of Wuchich's appeal could be anything but dispositive of Knafel's appeal from the dismissal of Count IV.

Under these circumstances, I believe that we should take this practical consideration into account and accept the district court's Rule 54(b) certification, at least insofar as it implicates Count IV of Knafel's complaint. I find little reason to remand Count IV to the district court when this court announces a dispositive holding in the very same appeal. Juridical concerns, therefore, counsel that we should accept jurisdiction and decide this aspect of Knafel's appeal

along with Wuchich's. *See Corrosioneering,* 807 F.2d at 1283 (listing as one factor to be considered in reviewing a Rule 54(b) certification, "the possibility that the reviewing court might be obliged to consider the same issue a second time" (quoting *Allis-Chalmers Corp. v. Philadephia Elec. Co.,* 521 F.2d 360, 364 (3d Cir.1975))).

Moreover, I do not believe that we should refrain from accepting jurisdiction over Knafel's appeal solely on the ground that the district court failed to explain its Rule 54(b) order. To my knowledge this court has never held that the failure to explain a Rule 54(b) certification, standing alone, rises to the level of a jurisdictional defect. Rather, our analyses in *Solomon, COMPACT,* and *Corrosioneering* teach that upon finding the district court's certification deficient, this court must independently review the relevant juridical and equitable considerations, insofar as they are disclosed by the record and elucidated by the parties, to determine whether the district court's Rule 54(b) order is nonetheless salvageable. *See Corrosioneering,* 807 F.2d at 1284–85 (court undertakes an "independent analysis of the juridical and equitable concerns present in the instant case" (footnote omitted)); *id.* at 1285–86 (Nelson, J., dissenting) (concluding that in spite of the failure to explain, the court should exercise its jurisdiction); *COMPACT,* 786 F.2d at 230–31 (court finds it impossible to determine upon its independent review of the record, which issues as to which parties the district court's Rule 54(b) order purported to finally decide); *Solomon,* 782 F.2d at 61–62 (finding that interest of justice would be better served if the appeal were presented as a "unified package"). Applying these principles to the instant case, I would accept jurisdiction over Knafel's appeal from the dismissal of Count IV, since it will be effectively resolved by our decision on the merits of Wuchich's appeal.

The decision to accept jurisdiction over Knafel's appeal from the dismissal of

* In spite of the district court's order consolidating Wuchich's and Knafel's cases, under Sixth Circuit precedent we clearly have jurisdiction over Wuchich's appeal even though the district court did not certify it under Rule 54(b). *See*

*Kraft, Inc. v. Local Union 327,* 683 F.2d 131 (6th Cir.1982) (per curiam); *but see Trinity Broadcasting Corp. v. Eller,* 827 F.2d 673 (10th Cir. 1987) (per curiam); *Huene v. United States,* 743 F.2d 703 (9th Cir.1984).

Count IV brings into question whether the court should also accept the remainder of Knafel's appeal, *i.e.*, the appeal from the dismissal of Count III. Having accepted half of the district court's Rule 54(b) certification, considerations of judicial economy might indicate, in the proper case, that the court should take jurisdiction over the entire appeal. However, because the Supreme Court has already granted a writ of certiorari on the same issue, *see Lingle v. Norge Div. of Magic Chef, Inc.*, 823 F.2d 1031 (7th Cir.) (en banc), *cert. granted, —— U.S. ——*, 108 S.Ct. 226, 98 L.Ed.2d 185 (1987), I see no reason for this court to take jurisdiction over the remainder of Knafel's appeal. In my opinion, the district court is in as good a position as we are, if not better, to apply the Court's eventual decision in *Lingle* to this case in the first instance. Accordingly, I see no advantage in taking jurisdiction over Knafel's appeal from the dismissal of Count III.

For the foregoing reasons, I concur in the majority's decision not to accept jurisdiction over Knafel's appeal from the dismissal of Count III and in the court's disposition of Wuchich's claim on the merits. However, I dissent from the court's refusal to take jurisdiction over the appeal from the dismissal of Knafel's Count IV; I would affirm that dismissal in accordance with our decision on the merits of Wuchich's appeal.